We'll move now to Appeal 25-3016 Sanders v. Commonwealth Edison Company We'll begin with oral argument on behalf of the appellant, Ms. Hall-Jackson. Good morning. May it please the Court, I am Attorney Shaquita Hall-Jackson of Hall-Jackson & Associates on behalf of the appellant, Belinda Sanders. This appeal presents a straightforward summary judgment question. Whether a reasonable jury can conclude that Commonwealth Edison, known as ComEd, denied Belinda Sanders two E4 HR positions, promotions, I shall make that clear, because of race and age discrimination. The answer is clearly yes. The District Court committed reversible error by resolving disputed facts in ComEd's favor by applying the Rome Framework in this Fair to Remote case, and by failing to evaluate the evidence cumulatively as Ortiz requires. Belinda Sanders is a black woman over the age of 40, with more than 30 years of human She has more than, excuse me, an MBA, concentrated in human resources, multiple HR certifications, leadership awards from ComEd executives, and extensive labor and employee relations experience. The position at issue requires substantial HR operational experience and knowledge about employment laws. Sanders clearly met those qualifications. The record contains evidence that the younger white employee selected over Sanders did not. The case is not about a second guessing of business judgment. This is a case where a jury could reasonably conclude that ComEd selectively applied the subjective standards to deny advancement of a highly qualified black employee over the age of 40, while repeatedly promoting younger white employees with substantially less human resources experience. Ms. Hall-Jackson, it appears that from the briefing, the argument is largely situated in McDonnell-Douglas. I did hear you mention Ortiz earlier. The Ortiz approach, obviously, is something that's going to look at things more holistically. Are you asking us to analyze this case under both approaches, or do you rely on McDonnell-Douglas? McDonnell-Douglas gives a framework, and as we have seen over the years, Your Honor, with various different cases under Title VII and 1981, 1983, it stays the same way, regardless if you apply the McDonnell-Douglas framework or the Ortiz matter. The fourth element is what at issue here, and it should not be that they share the same supervisor. That is something that you look at when you're talking about behavioral incidents or someone violating the policy within internal operations. Here, we're talking about someone who was qualified, and if you apply that fourth element that the appellee is relying on with the idea that it should be based on the fact that she did not share the same supervisor as these two other candidates, then that would just harm any applicant if they never had the actual same supervisor, especially when you're talking about different employees coming from different departments internally and from different organizations, and ultimately, how can they ever compete if it's a requirement? Ms. Hull-Jackson, what do you make of ComEd's reasoning for promoting the other two candidates, that they had kind of broader experience in terms of broader exposure to other business groups and to kind of more of a client-facing role? That seems to be kind of the main reason. You know, there's talk about kind of how they did on interviews and the third-party evaluations, but it seems like one of the main reasons was this kind of difference in experience. Yes, Your Honor. I make, in all due respect, very light of that position due to the fact, several reasons. One, Ms. Sanders had over 30 years' experience. Now, internally, she had 12 years. These individuals both was trained and shadowed Ms. Sanders while she was there. Outside of that, going to cross-train under different departments and rotation, that was something that was not required by Lisa Lopez, and she made that clear. Charles Davis, who's also both these individuals, Ms. Sanders' prior supervisor, they also made it clear that they got promoted, and that was never a requirement. Nothing has been produced in writing or oral testimony that shows that that is a requirement. It was all pretextual, and you look at it in whole. Secondly, these two young ladies that did have it, you're talking about someone that's gone from being a lifeguard to now running HR. Then you have someone who was a hairstylist now going to run HR. I don't think none of that would ever compare to someone who has 30-plus years' experience and 12 within that industry who did cross-train. She went to more than three different departments by the time that this became a legal issue. She actually did cross-train, whether she wanted to or not. Lastly, as it relates to the cross-training, you have to look at it. It's still a human resources role, and so within her going to the prior departments, she's still operating. Based off past experience, she knows this firsthand that she's still operating, doing the HR responsibilities, that she would be in a different department. That's for a prime example. If I go work for the City of Chicago, regardless if I'm in the Streets of Sanitation, Department of Aviation, Fire, my human resources duties are ultimately the same. And so I believe their answer and their response to that is all pretext for discrimination. Comack attempts to portray Sanders as someone who failed to broaden herself professionally because she allegedly declined rotational opportunities, but the record directly undermines the explanation. First, the evidence reflects that other promoted employees also declined rotations and steal the vans. Second, Sanders had already rotated departments within Comack from construction and maintenance and TNS. Third, Lisa Lopez, Sanders' former manager, testified that she herself had received multiple promotions before obtaining the strategic exposure Comack now claims Sanders lacked. Fourth, Lopez specifically acknowledged that she did not rotate through departments before advancing. Another, Papp, oh, start there, and neither Papp nor Allen had call center experience before promotions, despite Comack now attempting to portray those experiences as important development stepping stones. A reasonable jury could conclude that Comack selectively enforced this supposed rotation requirement against Sanders while excusing it for younger white employees. The district court compounds that error by effectively imposing the same supervisor requirement because Sanders did not report to the same supervisors as the promoted employees. But that reasoning collapsed under its own logic. If an employee seeking promotion must already share the same supervisor as the promoted candidate in order to be considered comparable, the internal promotions cases will become nearly impossible because employees competing for promotions frequently come from different departments, different divisions, and different management structures. And this completely contradicts Comack's own theory. Comack argues Sanders should have rotated to different departments to gain broader experience, but employees who rotate necessarily end up under different supervisors. Comack cannot simultaneously argue that employees must rotate departments and also argue that they are incomparable once they do not share the same supervisor. This is precisely why Seventh Circuit precedents and failure to promote cases focus on whether the plaintiff was similarly or better qualified and not whether they shared the same supervisor. Kenny, Riley, Ruffell, Logan, and Cunningham all support that framework. And here a reasonable jury could clearly conclude Sanders was more qualified. Comack attempts to justify these decisions by arguing that Papp and Allen possessed broader or more strategic experience. But the record allows a jury to question whether the explanation was honestly believed. Once elected, an employee allegedly came into HR from lifeguard background with no prior HR experience before entering Comack, another allegedly transitioned from hairstyling into HR. Meanwhile, Sanders has spent more than 30 years in human resources and more than a decade handling HR operations within Comack within itself. And even if Sanders had rotated to another department, she still would have been promoting HR duties and responsibilities. Comack never adequately explains how these alleged rotations transform employees with dramatically less HR experience into more qualified HR leader candidates than Sanders. The issue is not whether Comack was allowed to consider subjective criteria. The issue is whether a jury could reasonably conclude that these criteria was inconsistently applied and used as pretext. The record also contains direct evidence undermining Comack's asserted interview rationale. We want to just point out a few things. Destiny Woods, who served on the interview panel, testified during her deposition that Sanders performed well and actually responded to the required STAR method, while Papp was the least impressive of the candidates in that she was ultimately shocked at who was ultimately selected when she got word of who got the positions. Also, there's no evidence that Comack departed... There is evidence, I'm sorry, that Comack departed from ordinary procedures. Davis testified that hiring managers ordinarily contacted a candidate's current manager regarding qualifications and performance. Bailey did not contact Davis, who was then, at that time, Sanders' manager and supervisor, despite Sanders' extensive performance history. Under Rudin, deviation from normal hiring procedures supports the inference of pretext, and the broader evidence further supports that inference. The record contains affidavits and testimony describing the ongoing pattern in which blacks and older employees struggle to advance beyond certain levels within common leadership. That was stated by Chuck Davis himself. Again, Sanders is not required to prove discrimination through a single smoke-and-gun statement. Under Ortiz, the court asked whether the evidence as a whole would permit a reasonable jury to conclude that race and age caused that adverse action of failure to promote her. Ms. Hill-Jackson? Yes. I understand what you're saying about Ms. Sanders' prior experience, but focusing on her, the process of getting this promotion, right? The record seems to indicate that, for example, with regard to previous evaluations, right, that Papp and Allen received higher marks than Ms. Sanders. It seems like, as I mentioned, that the third-party evaluation that Allen and Papp seemed to have done better than Ms. Sanders. I mean, there's kind of like, you know, she and Ms. Sanders did better on the interview. There seems to be just kind of factors that would kind of go, you know, one way or both ways with regard to the promotion evaluation process. And our case law is clear that if the plaintiff or the claimant is relying upon the fact that they're better qualified, that that burden is really high, right, that no reasonable jury can find that, find otherwise. And so here, given the fact that there seems to be indications pointing both ways, how does that establish pretext? It established pretext based on the fact that this was Ms. Sanders' fifth promotion that she applied for, and each time they went to someone who was under the age of 40, who went to a younger white female. Only one exception went to a white male, other than that the history had showed that this was the pattern within ComEd. And next, the idea that they did not go to her supervisor to ask him any questions regarding her performance. And then, as it relates to her performance overall, Ms. Sanders, again, is an award-winning employee of ComEd who has been acknowledged, got received bonuses every year, and pay increases. The marks, if you pay attention to the record, Your Honor, there was testimony by Charles Davis that indicated that they would have these meetings where he would select and actually mark Ms. Sanders higher, and then these same individuals that influenced the promotion, Bailey and a few other, even Pat was, or Alan was actually present in these meetings, that convinced Chuck that he had to, Mr. Davis, that he had to lower her evaluation with the intentions that this was all pretext because she would have been highly qualified, and the most qualified within the department, so any time a promotion was coming up, these marks was required to go down. All of those pretexts. Would you like to reserve the remainder of your time? Yes. I do appreciate that. Thank you, Ms. Hall-Jackson. Ms. Powers, we'll move to you now for argument on behalf of the appellee. Thank you, Your Honors. May it please the Court, my name is Allison Powers, and I represent the appellee, Commonwealth Edison or ComEd. In 2022, when Ms. Sanders applied for the HR manager roles, which are the only roles under discussion in this appeal, she was not selected because after years of declining opportunities and constructive feedback to move around within ComEd and broaden her experience, she lacked the professional dimension, the positions required. This case, therefore, is not about a decision to treat Ms. Sanders differently and less favorably than younger white women. Rather, it has to do with whether ComEd may legitimately prefer candidates who step up to demonstrate the desired breadth and scope of experience. Why does any of that matter? Responding to Judge Lee's question, isn't the question whether ComEd lied? We would agree with you, Your Honor. Indeed, I would... ComEd can promote whoever they want. I agree. As long as they don't lie about it. That's the pretext test, right? I agree, Your Honor. And the district court properly moved to pretext after considering whether the prongs of McDonnell Douglas on the prima facie case were satisfied. The court then shifted the burden. ComEd obviously... I mean, it doesn't... You're arguing, we have no idea who's more qualified. We don't have any idea. We don't really care who's more qualified. As long as ComEd didn't lie about why they promoted one candidate or another... The plaintiff fails the pretext test, I think. Or am I wrong on that? You're absolutely correct, Your Honor. And the record does not contain any evidence that ComEd lied about its proffered reasons for placing Ms. Papp and Ms. Allen in the positions. I mean, we get... I ask that question because sometimes I think we get arguments where the fourth prong of the McDonnell Douglas test is conflated with pretext. In other words, the fourth prong, similarly situated or comparable employees, that's different though than... Even if a plaintiff can say, look, I'm at least as qualified or even I'm much better qualified than the candidate that was actually promoted. If ComEd comes forth and says, these are the reasons we made the promotion, they have nothing to do with race or age, if the plaintiff then can't prove that ComEd is lying about the promotion, the plaintiff's case fails. We agree, Your Honor. And the burden had shifted to plaintiff appellant to articulate why... Maybe. That's assuming the plaintiff can meet the prima facie case. But I think in a case like this, you can argue that even assuming the plaintiff can meet the prima facie case, ComEd's come forward with race and age neutral reasons and there's no evidence that those reasons are lies. We completely agree, Your Honor. Ms. Powers, one of the things that struck me when I was going through the record was the... And I think Ms. Hall-Jackson alluded to this, although she didn't particularly address it, was that the job description and the requirements was that a person needed to have eight years of experience, right? And Ms. Allen, at the time, not only when she was applying, but when she received the promotion, seemed to lack... She fell short of the eight years. She came close, but she didn't get to the eight years, right? And we have said that a deviation from practice is something that we can consider in determining whether or not there's any evidence of pretext. Can I ask you, like... You know, I didn't see it in the record, but maybe I just missed it. Is that something that came up during the evaluation process, that Ms. Allen didn't meet one of the kind of requirements of the job, at least the requirements, criteria that ComEd wanted the candidates to meet? That is not in the record, Your Honor, nor was it pursued on discovery by the plaintiff. But what I think... So no one from ComEd or any of the decision makers were asked, you know, hey, Ms. Allen didn't meet the eight years. Is that something that you thought about? That wasn't pursued at all during discovery? No, Your Honor, and in fact, the hiring manager was not deposed. I would also add that the court has been very clear that pretext requires more than just an inexact application of standards. It is not enough to show that the employer made the wrong choice or made any sort of mistake. The standard is that it needs to be a lie, and more specifically, that the lie needs to be a cover-up for unlawful discrimination. I would also add, Your Honor, that Ms. Sanders herself testified below that she thought Ms. Allen should have one of the promotions. And so she ranked herself second, and ostensibly the fight here was about a number two slot. And so when you look at the decision to place Ms. Allen in one of the spots, it's hard to understand how now there's a dispute about that. Ms. Sanders testified that she's not saying Ms. Allen shouldn't have been promoted. And so when we look at that and then we look at, you know, whether the company lied about its reasons, you know, there's obviously a major misalignment between what Plaintiff Appellant is saying and obviously how she testified previously. I was also struck that during the depositions of the interview panel, it didn't seem like anyone was asked directly whether race was a factor or directly whether age was a factor. Again, am I missing something? Did that come up during the depositions? I don't recall that those questions were squarely put before the interview panelists. I do recall that the interview panelists offered a number of opinions, such as that of Destiny Woods. I would point out, however, that Destiny Woods was one-fourth of the interview panel and that her opinion regarding, you know, how impressive or not impressive Ms. Sanders was, was just one component of the overall selection process. If I had to do mathematics, I would say it's about one-sixteenth. If I may continue.  The question here really, and what brings us here, is Ms. Sanders' mere disagreement with how ComEd evaluated her performance and experience as against that of the competition. This is not about any evidence that ComEd's stated reasons for selecting others was a cover-up for race or age discrimination, as we've been discussing. And just to address the standards, whether the record is viewed through the lens of a structured framework with shifting burdens, like McDonnell Douglas, or whether we look at just the holistic assessment that Ortiz instructs under just a plain totality of the circumstances, no reasonable juror, even given Ms. Sanders, all of the benefit of the doubt, would conclude that Ms. Sanders lost out on the chance to become an HR manager in 2022 because of race or age discrimination. Jessica Allen and Stacey Papp, as has been noted, worked across multiple client groups. Ms. Sanders had a stated preference, per her deposition, to remain in the departments that she was in. She routinely declined feedback to move around. And it is ironic that the same witnesses that she relies on today were the very ones, Lisa Lopez and Charles Davis, told her over about five years consecutively, that she needed to broaden her experience. I believe they were telling her that from about 2018 or 2017. She preferred to remain where she is. And ultimately, her non-selection was a consequence of those choices. The district court properly applied and considered McDonnell Douglas. It first considered whether there was a prima facie case, found that there probably wasn't, but moved on anyway. So the prima facie case at the stage of pretext falls to the wayside. And I agree completely that on that, there's just no evidence. And perhaps it's because it wasn't pursued at all, but it's not in the record. There's no evidence whatsoever that any reasonable juror could conclude that ComEd lied about its reasons. It was developed over five years, independently verified. Thank you, Ms. Powers. Anything further? No, Your Honors. Thank you. Ms. Hall-Jackson, we'll go back to you now for rebuttal argument. Going back to the issue at hand as it relates to pretext, there was evidence, and this was sought after. I asked Ms. Destiny Woods about the advancements of those Blacks in the workplace and also those over 40. This was also asked of Charles Davis and Lisa Lopez, who also was a part of the interview panel. So Destiny Woods and Ms. Lopez both was a part of the interview panel, and they both talked about the idea of advancement. And then there was affidavits from individuals who had firsthand knowledge because they were in a human resources role. They seen the who was promoted, who was not. And they also testified to the fact that there was this huge disparity when it came to people over 40 and African Americans getting promoted beyond an E-4 and pretty much beyond an E-3 and sometimes over an E-2. It just was very rare and it didn't happen. The rotation and broader thing I want to clarify, it was brought up to Ms. Sanders after she broke down and asked how come she had been passed over probably about a third time. And so now that's when it became an afterthought and now raised here as to why she was not promoted. Thank you very much, Ms. Hall-Jackson. Thank you very much, Ms. Powers. The case will be taken under advisement. Thank you.